UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EVE STEPHENS<br><br>    Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF TEXAS AT AUSTIN and THE UNIVERSITY OF TEXAS SYSTEM,<br><br>    Defendants. | §§§§§§§§§§§§§§§§   CIVIL ACTION NO. 1:25-CV-1897<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff Eve Stephens brings this action for damages and other legal and equitable relief from Defendants The University of Texas at Austin ("UT Austin") and The University of Texas System ("UT System") for violations of Title VII of the Civil Rights Act of 1964.

## INTRODUCTION

For twenty-five years, Plaintiff Eve Stephens shattered barriers in law enforcement. She was the first Korean American woman hired by Austin Police Department. The first Asian American woman to hold the rank of Commander at APD. The first woman to serve as Chief of Police at the University of Texas at Austin, and the first Asian American woman to lead a police department anywhere in the UT System.

Then, fourteen months into her tenure at UTPD, a different pattern of "firsts" emerged. She became the first UT Austin Chief of Police fired without cause—just weeks after receiving a positive performance review and merit raise. The first Chief terminated in violation of UT System

policy. The first Chief replaced by an unqualified, hand-picked white male successor who never applied for the job. And the first Chief whose firing was followed by a coordinated purge of female employees from the department.

This lawsuit is about those firsts.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and 28 U.S.C. §§ 1343(3), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any act of Congress providing for the protection of civil rights.

2. Venue is proper in this Court because the unlawful discrimination occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business, and reside in this judicial district.

## PARTIES

3. Plaintiff is a person who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a resident of this judicial district.

4. UT Austin is a public university based in this judicial district. It may be served through the Associate Vice President for Legal Affairs, The University of Texas at Austin, 2304 Whitis Avenue, FAC 438, Austin, Texas 78713, 512-471-1241. UT Austin will be afforded the opportunity to accept service of process pursuant to Federal Rule of Civil Procedure 4(d). If UT Austin fails or refuses to accept service of process as requested, then Plaintiff will request service of process pursuant to Rule 4(j).

5. UT System is a public university system based in this judicial district. It may be

served through the Vice Chancellor and General Counsel for the UT System Office of General Counsel, 210 W. 7th Street, Austin, Texas 78701. UT System will be afforded the opportunity to accept service of process pursuant to Federal Rule of Civil Procedure 4(d). If UT System fails or refuses to accept service of process as requested, then Plaintiff will request service of process pursuant to Rule 4(j).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to this lawsuit have been satisfied. Ms. Stephens timely filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission. She received her Notice of Right to Sue from the EEOC on September 26, 2025. This Complaint is filed within ninety days of receipt of the Notice of Right to Sue.

## THE UT SYSTEM AND UT AUSTIN RELATIONSHIP

7. This lawsuit concerns the termination of Plaintiff Eve Stephens from her role as Chief of Police for UT Austin. Pursuant to UT System policy, the Chief of Police is functionally employed by both UT System and the relevant academic institution (here, UT Austin). This dual employment arises from UT System Policy 170, "Oversight of Law Enforcement and Security for the University of Texas System," which provides the UT System Office of Director of Police with broad supervisory powers over institution police departments. To this end, the policy provides that:

> The Office of Director of Police (ODOP) of U.T. System Administration is responsible for providing oversight to all U.T. System institution police departments regarding all Systemwide law enforcement and security standards and practices, staffing levels, training requirements, and professional qualifications.

8. Per UT System policy, the ODOP Director "<u>will participate</u> in the selection process for any police chief, including providing advice and consultation, as well as recommendations, to those conducting the selection process and shall concur in the final decision" (emphasis added).

The policy further dictates that the ODOP Director "should be consulted regarding any decision to terminate an institution police chief <u>and must concur in that decision.</u>" (emphasis added). The policy also provides that the ODOP Director "has the authority to revoke the commission of any institution police officer, including the police chief, based on his best judgment as Agency Administrator."

9. Together, UT System and UT Austin were joint employers of Plaintiff and/or constituted an integrated enterprise, as both had substantial control over the essential terms and conditions of Ms. Stephens' employment in practice and as a matter of UT System Policy.

## STATEMENT OF FACTS

10. Plaintiff Eve Stephens is a decorated law enforcement professional who devoted her career to public service. Ms. Stephens spent the first twenty-four years of her career with the Austin Police Department, where she worked her way up from patrol officer in East Austin to a detective in APD's Child Abuse, Internal Affairs, and Financial Crimes units. From there, Ms. Stephens served as a sergeant over a team in South Central Patrol and was promoted to a lead role in APD's Organized Crime Division shortly after.

11. In 2019, APD promoted Ms. Stephens to serve as its Training Academy lieutenant, training 333 cadets in a two-year span and boasting a 100% pass rate for the state peace officer licensing exam. In 2021, APD promoted Ms. Stephens to commander, providing leadership for more than 110 sworn officers in the North Central Patrol Bureau. Ms. Stephens was one of three commanders who provided strategic and tactical leadership for APD SWAT team deployments. Ms. Stephens also created APD's first Women's Mentorship Program for female cadets and helped form a similar program at the state level for the Texas Police Chiefs Association.

**Ms. Stephens is Hired by Defendants**

12. In April 2022, UT Austin's Chief of Police passed away after a long illness. As a result, UT Austin began a nationwide search for a new Police Chief. Ms. Stephens applied for the position.

13. Per UT System Policy 170, the selection of the new university Chief of Police involved both UT Austin and the UT System ODOP. The Director of ODOP is responsible for establishing minimum hiring criteria and job qualifications for an institution's Police Chief, participating in the selection process, and is required to concur with the final hiring decision. In addition, ODOP maintains the commissions for all law enforcement officers employed by UT System institutions.

14. On June 13, 2023, after a rigorous months-long hiring process, Ms. Stephens was offered the position of Chief of Police for UT Austin. Ms. Stephens was the first female and first Asian American Chief of Police in UT Austin history. At her swearing in ceremony, UT Austin President Jay Hartzell stated that he was "confident Chief Stephens is the right person" to lead UTPD, and ODOP Director Michael Heidingsfield noted that "during the course of a highly competitive national search, Chief Stephens emerged as the most compelling of candidates."

15. Chief Stephens officially began her role at UTPD on July 5, 2023. She quickly began to address longstanding problems within the department. The previous Chief, due to his multi-year illness, had been absent from the office for long periods of time. In his absence, the department had relied on a series of interim chiefs. As a result, UTPD was in disarray: it was critically understaffed, morale was low, and performance standards were not being enforced. The officers within UTPD were so excited about Chief Stephens' hiring that they made stickers with the hashtag "Believe in Eve."

16. Chief Stephens quickly started working to fill the numerous vacancies within UTPD and to increase the quality of candidates that UTPD recruited. At the time of her hiring, UTPD had approximately thirty vacant positions. She set up weekly accountability meetings with everyone involved in the recruiting effort, from officers up to Assistant Chiefs, to ensure that the team was aligned in its recruiting vision and was making demonstrable progress in filling vacant positions.

17. Chief Stephens improved morale within the department by securing fifteen percent raises for all officers, the highest raises that UTPD officers had ever received. She also set up a "Chief's Advisory Board" where various representatives from the department worked each week to craft a model for how they wanted the department to operate. Because it was a collaborative effort, the model had substantial buy-in from officers within the department. One of the most significant and positive changes in the finalized model was the creation of a permanent Mental Health Unit within UTPD.

18. Shortly after her arrival at UTPD, many officers confided in Chief Stephens that the department had been plagued by favoritism and a "good 'ole boy" system in which friends of those in charge were treated more favorably. This system had long disadvantaged female UTPD officers who were grossly underrepresented within the department.

19. Chief Stephens worked to address this issue by ensuring that hiring, promoting, and compensation decisions followed UT System policy and were based on merit, not favoritism. Similarly, as a longtime proponent of increasing female representation within police departments, Chief Stephens endeavored to hire and promote more female officers. For example, Chief Stephens hired Ashley Griffin, a highly qualified and longtime employee of both UT Austin and UT System, to be the department's first-ever female Assistant Chief.

**UTPD is Moved Under the Office of Legal Affairs**

20. As the Chief of UTPD, Chief Stephens had a bifurcated reporting structure – one for UT Austin and one for UT System. For the first six months of her tenure, Chief Stephens's UT Austin supervisor was Interim Vice President and Chief Financial Officer Dan Slesnick, and her UT System supervisor was ODOP Director Michael Heidingsfield. During this period, neither Mr. Slesnick nor Mr. Heidingsfield provided any negative feedback to Chief Stephens regarding her performance.

21. On or about January 2024, Chief Stephens was informed that there would be an organizational change to the department. For reasons never explained to Chief Stephens, UTPD was administratively moved from the financial office to UT Austin's Office of Legal Affairs. Accordingly, effective February 1, 2024, Chief Stephens' new UT Austin supervisor was Vice President for the Office of Legal Affairs, Ms. Amanda Cochran-McCall.[1] Before this move occurred, Chief Stephens was warned by a female employee of UT Austin to watch out because Ms. Cochran-McCall had a reputation for not getting along with other women.

22. Once UTPD was administratively moved under the Office of Legal Affairs, the entire atmosphere of the department changed. Almost immediately, Ms. Cochran-McCall was so openly and outwardly critical of Chief Stephens that other employees of UTPD believed Ms. Cochran-McCall did not like or respect Chief Stephens. Despite Ms. Cochran-McCall's career as a civil attorney who had neither worked in nor managed a police department, she regularly informed Chief Stephens that she did not need the Chief's insight into police work because she was "the attorney." She micromanaged Chief Stephens by inserting herself into police work in

---

[1] Importantly, UTPD was *not* merged into the Office of Legal Affairs – it remained a distinct department that reported to the Office of Legal Affairs on the organizational chart.

ways that no previous civilian UT Austin leadership had done.

23.     One example of Ms. Cochran-McCall's unusual micromanagement involved her meddling in the UTPD promotional process. In January 2024, Chief Stephens had nearly completed the process for filling an open Captain position. She was filling the vacancy in accordance with ODOP Policy 401, "Applicant Selection Process for Employment." The final remaining step in the process was for the ODOP Director to certify the list of the top three candidates. ODOP Policy 401 states that "applicants must be selected from this list in order of their final ranking."

24.     Despite this policy, Ms. Cochran-McCall informed Chief Stephens that she wanted to re-open the hiring process, personally interview all the candidates, and then make the hiring decision herself. Chief Stephens feared that this deviation from policy in favor of Ms. Cochran-McCall's personal hiring preference was a return to the exact "good 'ole boy" system Chief Stephens had attempted to remedy. Whether by design or otherwise, Ms. Cochran-McCall's decision to undermine UT System's policy led the lone female candidate to withdraw her name from consideration altogether due to her concerns of bias. Ms. Cochran-McCall ultimately affirmed these concerns by choosing not to promote the highest ranked candidate.

25.     In another instance, Ms. Cochran-McCall scolded Chief Stephens for following the law because she believed it conflicted with Legal Affairs' prerogative. Ms. Cochran-McCall chastised Chief Stephens for retaining documents related to criminal investigations because those documents would then potentially need to be released to the public in response to a Public Information Act request. Ms. Cochran-McCall told Chief Stephens that "best practice" would have been to "keep our files cleaned up," but that "since [the documents] exist, I will now need to review." Chief Stephens responded that "best practice for police work in criminal cases would be

to not delete."

26. Ms. Cochran-McCall's demeanor toward Chief Stephens and the other female officers was cold, condescending, and unfriendly. Based on their interactions with Ms. Cochran-McCall, female employees of UTPD believed Ms. Cochran-McCall did not want to have women in leadership positions. Captain Laura Davis, the highest-ranking female officer behind Chief Stephens and Assistant Chief Griffin, observed that Ms. Cochran-McCall seemed to go out of her way to avoid speaking to her. Instead, Ms. Cochran-McCall would direct her questions to Captain Davis's male subordinates.

27. By contrast, female employees of UTPD noticed that Ms. Cochran-McCall's demeanor toward male officers was markedly different. With male officers, Ms. Cochran-McCall was outgoing, warm, and even flirtatious. While Ms. Cochran-McCall would sometimes raise her voice or become argumentative with female officers, she was never observed treating male officers that way.

**Chief Stephens Excels in her Role and is Publicly Praised by UT Austin Leadership**

28. In March 2024, ODOP Director Heidingsfield retired. Accordingly, Chief Stephens no longer reported to either of the two people who had been responsible for her hiring—ODOP Director Heidingsfield and UT Austin CFO Dan Slesnick. Director Heidingsfield was replaced by Interim ODOP Director David Ferrero.

29. In early April, Chief Stephens hired former APD Lieutenant Shane Streepy to serve as an Assistant Chief for UTPD alongside Assistant Chief Griffin.

30. In late April 2024, universities all over the country were embroiled in campus protests resulting from the conflict between Israel and Palestine. UT Austin was not immune to the conflict, and Chief Stephens oversaw UTPD's response to several protests at UT Austin.

Although the campus unrest presented a very challenging and fluid situation, Chief Stephens and UTPD were widely commended for their handling of the protests. UT Austin President Jay Hartzell praised UTPD for its "extraordinary restraint in the face of a difficult situation that is playing out at universities across the country." President Hartzell also sent a recorded video message to the entire police department thanking them for a job well done.

31. In addition to her successful handling of the protests, Chief Stephens was also poised to complete a monumental recruiting effort. Under her guidance and leadership, the department had recruited the largest cadet class in the history of UTPD and UT System. The September 2024 cadet class included over twenty cadets. The previous year's cadet class had only five cadets from UTPD. On information and belief, UTPD had historically averaged three to five cadets per year.

32. Over the summer of 2024, Chief Stephens also oversaw the remodel and grand re-opening of the West Campus UTPD office. This was a high priority item for UT Austin.

33. In or about August of 2024, Chief Stephens' outstanding performance was recognized with a positive annual performance review. In their review meeting, Ms. Cochran-McCall praised the work that Chief Stephens was doing, and noted in particular that Chief Stephens had done a great job handling the protests. In recognition of this good work, Ms. Cochran-McCall gave Chief Stephens a 2% merit raise effective September 1, 2024.

**Chief Stephens is Summarily Terminated Weeks After her Positive Review and Raise**

34. On September 19th, 2024, upon arriving home from the National Institute of Justice Conference in Pittsburgh, Pennsylvania, Chief Stephens saw that she had been scheduled for a meeting with Ms. Cochran-McCall the next day. Ms. Cochran-McCall would not tell Chief Stephens what the meeting was about.

35. The meeting was conducted via Zoom and included Chief Stephens, Ms. Cochran-McCall, and HR representative Karen Chawner. In the meeting, Ms. Cochran-McCall informed Chief Stephens that she was being fired and could choose to be terminated, to resign effective immediately, or to resign as a special advisor while keeping pay and benefits for two additional months. Chief Stephens asked Ms. Cochran-McCall if she would give her the courtesy of telling her why she was being fired, given that she had just received a merit raise and positive review. Ms. Cochran-McCall, a long-time employment attorney, told Chief Stephens she did not have to give her a reason. She then left the meeting. Ms. Chawner told Chief Stephens that she had until noon to make a decision.

36. Ms. Cochran-McCall then provided a letter to Chief Stephens detailing her offer. In the letter, Ms. Cochran-McCall stated: "I want to offer you the temporary role of Special Advisor to the Vice President of Legal Affairs to allow you to transition out of the University smoothly." She went on to state that in this role, Chief Stephens would "work remotely and only perform tasks as assigned by me" and would "no longer lead, oversee, or interact with the University of Texas Police Department or its personnel."

37. Ms. Cochran-McCall reiterated that, despite Chief Stephens still being a UT Austin employee, she could not "contact or interact with other university employees, including those in UTPD" and could not respond to any messages from UT Austin employees without Ms. Cochran-McCall's "written approval." Ms. Cochran-McCall informed Chief Stephens that her employment with UT Austin would end on November 19, 2024. At no point did Ms. Cochran-McCall provide any rationale for Chief Stephens' termination.

38. Chief Stephens ultimately elected to accept the temporary advisor role and was formally terminated from UT Austin on November 19, 2024. As a result of her firing, newly hired

ODOP Director Michael Parks revoked Chief Stephens' peace officer commission. Thus, Chief Stephens' decorated twenty-five-year career in law enforcement came to an abrupt and unceremonious end.[2]

39. Chief Stephens had worked for Ms. Cochran-McCall for approximately seven months at the time of her firing.

40. Chief Stephens later came to learn that she was not the only UTPD employee let go on September 20, 2024. Ms. Cochran-McCall also summarily terminated UTPD's Director of Executive Communications and Strategic Marketing, also an Asian American female. At the time of their summary terminations, she and Chief Stephens were the only two female Asian Americans in leadership at UTPD. Like Chief Stephens, she also had just received a positive performance review. And like Chief Stephens, she was also not informed of any performance reasons for her termination. They were the only two employees terminated.

**Chief Stephens is Replaced by Shane Streepy**

41. Chief Stephens was ultimately replaced as Chief of Police by Assistant Chief Shane Streepy, a white male. Mr. Streepy's hiring as Chief Stephens' replacement is noteworthy for several reasons. First, his credentials disqualified him for the position of Chief of Police pursuant to Defendants' own policies. One of the requirements for a UT System institution police chief is a minimum "of at least five years of service in an administrative, supervisory, or management position at the rank of Police Captain/Commander or above (or the equivalent)."[3] But during his career with APD, Mr. Streepy never held a rank higher than Lieutenant. Although he was an

---

[2] The news of Chief Stephens' mysterious and abrupt "resignation" quickly made local news. Although she has diligently been applying for chief positions in other cities, the circumstances of her termination have made obtaining such a position difficult if not impossible.

[3] This is a requirement Chief Stephens was required to (and did) meet.

Assistant Chief at UTPD, he had held that rank for a mere five months before his elevation to Chief of Police – a far cry from the five-year minimum.

42. Another remarkable detail of Mr. Streepy's appointment is that he bypassed the policy-mandated hiring process altogether. In the normal course, the firing, death, or resignation of a police chief at a UT System institution results in the appointment of an interim chief while a nationwide search is undertaken for a permanent chief. ODOP Policy 170 confirms this, noting that "the Director must concur with the selection of an interim police chief." Previous Chief applicants were required to complete a written application, participate in numerous panel interviews, and meet with UT Austin leadership and stakeholder groups prior to being extended a job offer. To this end, the hiring process following the death of Chief Stephens' predecessor took several months and was managed by a third-party executive recruiter.

43. But when it came to hiring Shane Streepy, Ms. Cochran-McCall clearly did not believe that she was bound by these policies. Mr. Streepy was not appointed an interim chief while a rigorous nationwide search was conducted. He did not have to apply to the open Chief of Police position because the position was never posted. He did not have to compete against qualified candidates from all over the country. He did not have to meet the requirements that every other UT institution Chief of Police, including Chief Stephens, has been required to meet.

44. Instead, Ms. Cochran-McCall hand-selected Shane Streepy to be the new Chief. ODOP Interim Director David Ferrero was given one day's notice of Ms. Cochran-McCall's decision to give the job to Mr. Streepy. Even more galling, Ms. Cochran-McCall told Mr. Streepy that he was the new Chief *before she ever informed Chief Stephens of her termination*. Indeed, Chief Streepy later indicated that he had known for some time that he was being groomed to replace Chief Stephens.

45. If there was an innocuous reason for Ms. Cochran-McCall to forego the institutionally mandated hiring process in favor of the immediate appointment of an internal candidate, there was someone else she could have considered: Assistant Chief Ashley Griffin. Ms. Griffin had been an Assistant Chief longer than Shane Streepy and had served UT Austin and UT System for over fifteen years. But Assistant Chief Griffin was never even given a chance to apply.

46. The elevation of Shane Streepy to the role of Chief created vacancies underneath him that needed to be filled. True to form, Ms. Cochran-McCall took it upon herself to fill the vacant Assistant Chief position with yet another white male internal candidate named Chris Miller. Ms. Cochran-McCall then promoted *another* white male officer to the role of Captain. None of these positions were ever posted, and female UTPD officers were therefore excluded from applying.

**Female Employees at UTPD are Targeted and Purged**

47. Under the leadership of Chief Streepy and Ms. Cochran-McCall, UTPD became a toxic and hostile environment for female employees. Chief Streepy was given free rein to single out the remaining female employees for mistreatment. For example, Chief Streepy began excluding Assistant Chief Griffin from leadership meetings, preferring to meet only with Assistant Chief Miller. Chief Streepy would constantly confuse Captain Laura Davis and Lieutenant Layne Smith, publicly calling each one by the other's name as though he could not tell them apart. He communicated frequently and casually with male officers, but with female officers he told them they needed a set meeting because communication with them was not "organic." He demanded that certain female employees adhere to a dress code that was not applied to male employees. Chief Streepy often made comments about the firing of Chief Stephens to the female officers, implying that if they could fire the Chief they could fire anyone. He hounded Captain Davis by repeatedly

asking if she was old enough to retire. Female officers lived in a culture of fear that they could be fired at any moment.

48. Ultimately, Assistant Chief Griffin and Captain Laura Davis were successfully forced out of UTPD by Chief Streepy, while Lt. Layne Smith opted to retire. On information and belief, all three of these female officers were replaced by white males. There are currently no women in leadership roles at UTPD above the rank of lieutenant.

49. Beyond senior leadership, Chief Streepy and Ms. Cochran-McCall have also overseen a purge of lower-level female officers and UTPD employees. In addition to the female officers discussed above, at least five other female UTPD employees have been fired or pushed out since the firing of Chief Stephens. They included two of the last remaining Asian American females at UTPD.

## COUNT I: SEX DISCRIMINATION
## 42 U.S.C. §§ 2000e et. seq. ("Title VII")

50. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

51. Plaintiff was employed by Defendants within the meaning of Title VII.

52. Plaintiff suffered an adverse employment action when she was terminated by Defendants.

53. Defendants violated Title VII when they terminated Plaintiff because of her sex, female.

54. Plaintiff suffered damages as a result of Defendants' illegal conduct.

55. Plaintiff's requests for relief are set forth below.

## COUNT II: NATIONAL ORIGIN DISCRIMINATION
## 42 U.S.C. §§ 2000e et. seq. ("Title VII")

56. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

57. Plaintiff was employed by Defendants within the meaning of Title VII.

58. Plaintiff suffered an adverse employment action when she was terminated by Defendants.

59. Defendants violated Title VII when they terminated Plaintiff because of her national origin, Asian American.

60. Plaintiff suffered damages as a result of Defendants' illegal conduct.

61. Plaintiff's requests for relief are set forth below.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII, 42 U.S.C. §§ 2000e et seq.;

B. All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, compensatory damages, and job benefits she would have received but for Defendants' discriminatory practices;

C. Reinstatement or, in the alternative, front pay;

D. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

  E. Pre-judgment and post-judgment interest, as provided by law;

  F. That the Court retain jurisdiction over Defendants until such time as they have satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

  G. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seeks injunctive relief, including, but not limited to:

  H. Training on the subject of Title VII for all of Defendants' employees;

  I. Supervisory discipline up to and including termination for any supervisor who engages in unlawful Title VII discrimination or retaliation;

  J. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief.

  Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Respectfully submitted,

*MELISSA R. HOLMAN*
Melissa R. Holman
Texas State Bar No. 24064501
mholman@holmanfirmpllc.com
**The Holman Firm PLLC**
1005 Congress Ave., Suite 925
Austin, Texas 78701
Telephone: (512) 287-5091
Facsimile: (512) 287-5092

**COUNSEL FOR PLAINTIFF**