**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| EVE STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | **CASE NO. 1:25-CV-1897** |
| v. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| AT AUSTIN and THE | § | |
| UNIVERSITY OF TEXAS | § | |
| SYSTEM, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANT UT AUSTIN'S ANSWER AND AFFIRMATIVE AND OTHER
DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT**

Defendant The University of Texas at Austin ("UT Austin") respectfully files this Answer and Affirmative and Other Defenses ("Answer") to Plaintiff Eve Stephens' ("Plaintiff" or "Stephens") Original Complaint, ECF 1 ("Complaint").

**INTRODUCTION**

The Chief of Police at UT Austin is a critical leadership position that directly impacts the education and research mission of the University. The Chief of Police is responsible for leading the UT Austin Police Department ("UTPD") and ensuring the safety of more than 55,000 students, 4,800 faculty, and 15,000 staff across 18 colleges and schools. Serving as UT Austin's Chief of Police demands more than effective policing skills. The Chief of Police must also be a strong, capable, and effective leader who understands how to prioritize the needs of UT Austin's campus community, visitors, and partners while building strong relationships across campus and beyond. Anything less undermines not just the confidence in the department, but the success of the entire University.

Stephens served as UTPD's Chief of Police from July 2023 to September 2024. While she was successful in certain limited areas, UT Austin terminated Stephens' employment due to ongoing

deficiencies in her overall performance, leadership, collaboration, and administrative judgment, which ultimately undermined her ability to effectively serve as the Chief of Police UT Austin needs. Stephens' immutable characteristics had no bearing on her separation from UT Austin, and her focus on them is a red herring deployed to avoid accepting personal responsibility for her choices and manner of performance. Plainly put, Stephens miscalculated UT Austin's commitment to having a best-in-class police department and its willingness to take the necessary steps—including separating a high-ranking (but deficient) employee—to achieve that goal.

Effective February 1, 2024, UT Austin changed UTPD's organizational structure to have the department report to the Vice President of Legal Affairs. But Stephens resented this organizational change and the new institutional expectations for the department—specifically, the requirement to collaborate and incorporate University practices instead of operating the department as a silo. Her clash with her new supervisor started nearly immediately. She resisted or disregarded directives, declined to act on high-priority and time-sensitive assignments, and exhibited combative and insubordinate behavior. Although UT Austin provided Stephens multiple opportunities to align her approach with institutional expectations, Stephens failed to exhibit the appropriate collaborative temperament and professionalism the University expects of its Chief of Police. That failure, combined with her failure to appropriately respond to requests for assistance made by campus partners, impeded the effective operations of UTPD, undermined its reputation, and contributed to a negative departmental culture inconsistent with UT Austin's high standards.

After an independent assessment of UTPD confirmed the negative impact of Stephens' leadership and performance deficiencies, UT Austin decided it was in the University and department's best interest to terminate Stephens. For UTPD to meet UT Austin's high standards, Stephens could no longer remain as the Chief of Police, as the importance of this position and its responsibilities required UT Austin to prioritize the needs of its campus community over giving Stephens further

opportunities to improve her deficient leadership and performance. In the wake of Stephens' separation, the department has improved, and campus partners' perceptions of the department have risen substantially, confirming that UT Austin made the correct decision. In sum, Stephens was terminated for legitimate, work-related reasons that had nothing to do with her sex or national origin.

### UT AUSTIN'S ANSWER TO THE ORIGINAL COMPLAINT

This Answer is being made on behalf of UT Austin only and not on behalf of co-defendant The University of Texas System ("UT System"), which is a separate legal entity. No denial, admission, or response made herein shall be considered to be on behalf of any entity other than UT Austin. The allegations in the Complaint are answered by the correspondingly numbered paragraphs below. Unless specifically admitted in this pleading, UT Austin denies each and every allegation contained in the Complaint. The headings and paragraphs below directly correlate to the sections and numbered paragraphs of the Complaint. Those titles are reproduced in this Answer for organizational purposes only, and UT Austin does not admit any matter contained therein.

- First Unnumbered Introductory Paragraph: Deny.

### INTRODUCTION

- Second Unnumbered Introductory Paragraph: Deny knowledge or information sufficient to form a belief about the truth of the first and second sentences. Admit Stephens was the first woman to serve as Chief of Police at UT Austin, but deny knowledge or information sufficient to form a belief about the truth of the remaining allegations in the third sentence with respect to UT Austin.

- Third Unnumbered Introductory Paragraph: Deny.

- Fourth Unnumbered Introductory Paragraph: Deny.

### JURISDICTION AND VENUE

1. Admit.

2. Admit venue is proper, but deny UT Austin engaged in any unlawful discrimination, as alleged in the first sentence. Admit the second sentence only with respect to UT Austin.

## PARTIES

3.     Deny the first sentence. Deny knowledge or information sufficient to form a belief about the truth of the second sentence.

4.     Admit, except deny that the University may be served through the Associate Vice President for Legal Affairs rather than the Office of the Vice President for Legal Affairs.

5.     Paragraph 5 contains allegations regarding UT System to which no response is required by UT Austin. UT Austin makes no representation on behalf of UT System.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.     Admit this paragraph with respect to UT Austin, except that UT Austin denies knowledge or information sufficient to form a belief as to when Stephens received the Notice of Right to Sue.

## THE UT SYSTEM AND UT AUSTIN RELATIONSHIP

7.     Admit the first sentence. Deny the second and third sentences. Admit the quoted language in the fourth sentence is present in UT System Policy 170.

8.     Admit the quoted language in the first, second, and third sentences is present in the text of UT System Policy 170 and under this policy, the ODOP Director may serve in a consultative role, but deny the remaining allegations in this paragraph.

9.     Deny.

## STATEMENT OF FACTS

10.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

11.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

12.     Admit.

13.     Admit the first sentence. Admit the second sentence includes language present in the text of UT System Policy 170, but deny knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence as it relates to UT Austin. Admit the third sentence.

14.     Admit the first sentence, but deny the description of the process as "rigorous." Admit that Ms. Stephens was the first female Chief of Police at UT Austin and deny knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence. Admit the quoted language from President Jay Hartzell and ODOP Director Michael Heidingsfield in the third sentence were excerpts from their respective

remarks at Stephens' swearing in ceremony.

15. Admit the first sentence. Deny knowledge or information sufficient to form a belief about the truth of the second sentence. Admit the third sentence. Deny the fourth sentence. Admit the fifth sentence, but deny the alleged cause of the disarray. Deny knowledge or information sufficient to form a belief about the truth of the sixth sentence.

16. Deny knowledge or information sufficient to form a belief about the truth of the first sentence. Admit UTPD had vacant positions at the time of Stephens' hiring in the second sentence, but deny knowledge or information sufficient to form a belief about the truth of the alleged number. Deny knowledge or information sufficient to form a belief about the truth of the third sentence.

17. Deny knowledge or information sufficient to form a belief about the truth of this paragraph.

18. Deny knowledge or information sufficient to form a belief about the truth of the first sentence. Deny the second sentence.

19. Deny knowledge or information sufficient to form a belief about the truth of the first and second sentences. Admit Ashley Griffin was hired by UTPD as Assistant Chief during Stephens' time as UTPD Chief of Police, but deny the rest of the third sentence.

20. Deny the first sentence. Admit that Stephens initially reported to Interim Vice President and Chief Financial Officer Dan Slesnick, but deny the rest of the second sentence. Deny knowledge or information sufficient to form a belief about the truth of the third sentence.

21. Deny knowledge or information sufficient to form a belief about the truth of the first sentence. For the second sentence, admit that there was a reorganization, effective February 1, 2024, where UTPD was moved to report to the Vice President for Legal Affairs, but deny that the reasons for the move were never explained to Stephens. Admit the third sentence. Admit footnote 1. Deny knowledge or information sufficient to form a belief about the truth of the fourth sentence.

22. Deny the first sentence. Deny the second sentence, except deny knowledge or information sufficient to form a belief about the truth of the allegation as to what "other employees of UTPD believed." Deny the third and fourth sentences.

23. Deny the first and second sentences. Deny knowledge or information sufficient to form a belief about the truth of the third sentence. Deny the fourth sentence. Admit ODOP Policy 401 includes the quoted language in the fifth sentence.

24. Deny.

25. Deny the first and second sentences. Admit the third and fourth sentences contain selected portions of an exchange between Ms. Cochran-McCall and Ms. Stephens, but otherwise deny that those sentences accurately reflect the nature of the exchange regarding transient information.

26. Deny the first sentence. Deny knowledge or information sufficient to form a belief about the truth of the second and third sentences. Deny the fourth sentence.

27. Deny that Ms. Cochran-McCall's demeanor was different toward women than men employees, but deny knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence. Deny the second and third sentences.

28. Admit the first sentence. Admit that by March 2024, Stephens no longer reported to Dan Slesnick, but deny the remainder of the allegations in the second sentence. Admit the third sentence.

29. Admit.

30. Admit the first and second sentences. In the third sentence, admit that UTPD was widely commended for its handling of the protests, but deny knowledge or information sufficient to form a belief about whether Stephens, individually, was widely commended. Admit the quoted language in the fourth sentence includes selected language made by UT Austin President Jay Hartzell in a public statement. Admit the fifth sentence.

31. Deny knowledge or information sufficient to form a belief about the truth of the first sentence. With respect to UT Austin, admit the second sentence to the extent it indicates the cadet class was the largest class UT Austin had sent to the UT System police academy in recent history, but deny knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence. Deny the third sentence, as the September 2024 class included twenty cadets. Admit the fourth sentence. Deny knowledge or information sufficient to form a belief about the truth of the fifth sentence.

32. Deny.

33. Deny the first sentence. Admit that Ms. Cochran-McCall commended Stephens' handling of the protests, but deny the remaining allegations in the second sentence. Admit Chief Stephens was provided a 2% merit raise effective September 1, 2024 based upon her role in handling the protests, but deny the remaining allegations in the third sentence.

34. Admit Stephens was invited to a meeting with Ms. Cochran-McCall to take place on September 20, 2024, but deny knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence. Deny the second sentence.

35. Admit the first and second sentences. Deny the characterization of Stephens' annual review being "positive," but otherwise admit the third sentence. Deny the fourth sentence. Admit the fifth and sixth sentences.

36. Admit the first sentence. Admit the quoted language in the second sentence includes selected language from the letter sent from Ms. Cochran-McCall to Ms. Stephens. Admit the quoted language in the third sentence includes selected language from the letter sent from Ms. Cochran-McCall to Ms. Stephens.

37. Admit the quoted language in the first sentence includes selected language from the letter sent from Ms. Cochran-McCall to Ms. Stephens. Admit the quoted language in the second

sentence includes selected language from the letter sent from Ms. Cochran-McCall to Ms. Stephens. Deny the third sentence.

38.    Admit the first sentence. With respect to UT Austin, admit the second sentence. Deny the third sentence. For footnote #2, admit the first sentence (but deny the description as "abrupt" or "mysterious"), and deny knowledge or information sufficient to form a belief about the truth of the second sentence.

39.    Admit that as of the time of Stephens' termination as UTPD Chief, Stephens had worked for Ms. Cochran-McCall for approximately seven months.

40.    Admit Stephens was not the only UTPD employee who was terminated on or about September 20, 2024, as alleged in the first sentence. Admit the second sentence, although deny the description of being "summarily" terminated and deny knowledge or information sufficient to form a belief about whether the employee was Asian American. Deny knowledge or information sufficient to form a belief about the truth of the third sentence. Deny the fourth and fifth sentences. To the extent the sixth sentence is made in reference to terminations executed on September 20, 2024, admit the sixth sentence.

41.    Admit the first sentence. Deny the second, third, and fourth sentences. Admit that Mr. Streepy never held a rank higher than Lieutenant at APD, but deny that this disqualified him for the position of UTPD Chief of Police. Admit Mr. Streepy had been employed as UTPD Assistant Chief approximately five months at the time he was promoted to UTPD Chief of Police, but deny the remainder of the sixth sentence. Deny footnote #3.

42.    Deny the first and second sentences. Admit the quoted language in the third sentence includes selected and partial language present in UT System Policy 170. For the fourth sentence, admit that during Stephens' hiring process, as an outside candidate, Stephens was required to complete the listed tasks, but deny knowledge or information sufficient to form a belief about the truth of the remaining claims of the fourth sentence. For the fifth sentence, admit that the process concluding with Stephens' selection did span several months.

43.    Admit first sentence insofar as internal promotions may follow a different process than that used for Stephens's hiring as an outside candidate, but deny the remainder of the claims in the first sentence. Admit the second and third sentences. Deny the fourth and fifth sentences.

44.    Admit Mr. Streepy was selected to be the new Chief after Ms. Cochran-McCall consulted and obtained approvals, but deny the remaining allegations in the first sentence. Deny the second sentence. Admit Mr. Streepy was informed of the decision to promote him to Chief before Stephens was informed of her termination as Chief, but deny the remaining allegations in the third sentence. Deny the fourth sentence.

45.    Deny that Ashley Griffin was not considered for the position, and deny the remainder of the first sentence. Admit the second and third sentences.

46.    Admit the first sentence. Deny the second and third sentences, but admit that key

leadership vacancies were filled with the most qualified and best internal candidates without regard to their sex, race, or national origin. Deny the fourth sentence, but admit these positions were not posted.

47.    Deny.

48.    Deny the first sentence, but admit Layne Smith retired from UTPD. Deny the second sentence. Admit the third sentence as it relates to police officers of UTPD, but deny the truthfulness of the third sentence as it relates to the professional staff of UTPD.

49.    Deny.

## COUNT I: SEX DISCRIMINATION
## 42 U.S.C. §§ 2000e et. seq. ("Title VII")

50.    The preceding paragraphs are admitted or denied as set forth in the corresponding numbered responses above.

51.    Admit with respect to UT Austin, but deny with respect to UT System.

52.    Deny.

53.    Deny.

54.    Deny.

55.    Deny Stephens is entitled to the relief requested.

## COUNT II: NATIONAL ORIGIN DISCRIMINATION
## 42 U.S.C. §§ 2000e et. seq. ("Title VII")

56.    The preceding paragraphs are admitted or denied as set forth in the corresponding numbered responses above.

57.    Admit with respect to UT Austin, but deny with respect to UT System.

58.    Deny.

59.    Deny.

60.    Deny.

61.    Deny Stephens is entitled to the relief requested.

## DEMAND FOR JURY TRIAL

Admit that Stephens makes a demand for a jury, but deny Stephens is entitled to a jury trial on any or all issues.

## PRAYER FOR RELIEF

Deny that Stephens is entitled to any of the relief requested.

## AFFIRMATIVE AND OTHER DEFENSES

By way of further answer, and without admitting any allegations asserted in the Complaint, UT Austin affirmatively pleads the following defenses. Nothing stated in any of the following defenses constitutes a concession that UT Austin bears any burden of proof on any issue that it would not otherwise bear. UT Austin reserves the right to supplement these pleadings with further applicable defenses as additional facts become available. To the extent any defenses or legal theories may be interpreted as inconsistent, they are pled in the alternative.

1.  All employment actions taken by UT Austin with respect to Stephens were based on legitimate, non-discriminatory reasons unrelated to Stephens' sex or national origin.

2.  Assuming arguendo that an impermissible factor was a motivating factor for any employment practice concerning Stephens (which UT Austin expressly denies), UT Austin would have taken the same action regardless of any protected status of Stephens's.

3.  UT Austin's actions with respect to Stephens were done in good faith and without malice, willfulness, or discriminatory intent.

4.  Stephens' own acts and/or omissions caused or contributed to her damages, if any.

5.  UT Austin is entitled to an offset against Stephens' alleged damages for amounts Stephens earned or should have earned through a reasonably diligent search for comparable employment, as well as other earning and income, including but not limited to unemployment benefits, disability benefits, workers' compensation benefits, and/or social security benefits.

6.  To the extent Stephens is entitled to damages, Stephens has failed to mitigate her damages.

7.  Stephens' claims and alleged damages are subject to all applicable statutory limitations,

including the applicable statutory damages caps and the exemption of a government, government agency, or political subdivision from punitive damages.

8.      UT Austin reserves the right to add additional defenses as they become known.

WHEREFORE, PREMISES CONSIDERED, UT Austin respectfully requests that Stephens take nothing by this suit, and that UT Austin be awarded costs, attorneys' fees, expenses, and all other legal and equitable relief to which it may be entitled.

Dated: January 20, 2026

Respectfully submitted,

*/s/ Darren G. Gibson*
Darren G. Gibson
State Bar No. 24068846
Darren.Gibson@michaelbest.com
Ryder F. Smith
State Bar No. 24117210
Ryder.Smith@michaelbest.com

MICHAEL BEST & FRIEDRICH LLP
515 Congress Avenue, Suite 2500
Austin, Texas 78701
Telephone: 512.320.0601
Facsimile: 512.640.3170

**ATTORNEYS FOR DEFENDANT THE UNIVERSITY OF TEXAS AT AUSTIN**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, a copy of the foregoing document has been electronically filed with the Court, and served on the following by CM/ECF, causing electronic service upon all counsel of record.

/s/ *Darren G. Gibson*
Darren G. Gibson